| | |
|---|---|
| **WO** | **JWB** |

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicholaus James McDonald, | No. CV 07-1022-PHX-GMS (MHB) |
| Plaintiff, | **ORDER** |
| vs. | |
| Ronolfo Macabuhay, et al., | |
| Defendants. | |

Plaintiff Nicholaus James McDonald filed this civil rights action under 42 U.S.C. § 1983 against Arizona Department of Corrections (ADC) physician Ronolfo Macabuhay (Doc. # 14). Pending before the Court is Defendant's Motion for Summary Judgment (Doc. # 46). The motion is fully briefed (Doc. ## 48, 51, 54). The Court will deny the motion.

**I.     Background**

Plaintiff filed his original Complaint in this action on May 18, 2007 (Doc. # 1). Plaintiff also moved for the appointment of counsel (Doc. # 3). The Court granted the motion (Doc. # 8); Plaintiff filed his First Amended Complaint on December 21, 2007 (Doc. # 14). Plaintiff's First Amended Complaint presented one claim for relief—that Defendant was deliberately indifferent to Plaintiff's serious medical needs in failing to timely follow-up on abnormal liver function tests and diagnose Plaintiff's serious medical condition, and failing to provide any medical care or treatment for that serious medical condition (id. at 2). Plaintiff alleged that as a result of Defendant's deliberate

indifference, Plaintiff developed end-stage liver disease with painful side effects and a decreased life expectancy (id. at 2-3).

///

## II. Factual Background

Plaintiff was housed in the Arizona State Prison Complex (ASPC) Lewis-Morey Unit from November 22, 1999 until March 17, 2004 (Def.'s Statement of Facts (DSOF), Doc. # 41 ¶ 9). From Marcy 17, 2004 until December 1, 2007, he was housed at the ASPC Lewis-Rast Unit (id.). Defendant first saw Plaintiff in August 2002 for a skin problem (id. ¶ 18). Defendant next saw Plaintiff on October 29, 2003 for sharp pain in his lower chest (id. ¶ 19). Plaintiff reported that he had done various intravenous drugs in the past and drank alcohol before his incarceration (id.). Defendant ordered blood tests and a chest x-ray and noted on Plaintiff's chart that a follow-up appointment should be scheduled (id. ¶ 20). Plaintiff's blood tests were drawn on November 17, 2003, and Defendant read and recorded them in Plaintiff's chart on December 1, 2003 (id. ¶ 21). The blood tests revealed an ALT (liver enzyme) level of 181 (id. ¶ 22).[1]

Defendant next saw Plaintiff on September 9, 2004 (id. ¶ 35). Defendant noted Plaintiff's November 2003 elevated ALT level and also noted that no follow-up ever occurred. Defendant ordered another blood test (id. ¶ 36). The second blood test was taken on September 13, 2004, and Defendant read it on September 23, 2004 (id. ¶ 37). Plaintiff's ALT level was 95 (id.). Defendant ordered that the blood test be repeated in 3-6 weeks (id.).

Plaintiff submitted a Health Needs Request (HNR) requesting the results of his blood test (id. ¶ 38). Defendant saw Plaintiff on November 17, 2004 and informed Plaintiff that he had persistently elevated liver enzymes and a decrease in blood platelets (id. ¶ 39). Defendant ordered a Hepatitis profile, which included a RIBA test to confirm the presence of Hepatitis C (id.). The tests were taken on November 19, 2004 (id. ¶ 40).

---

[1] A normal ALT level is 40 or below (DSOF ¶ 22).

- 2 -

Plaintiff tested positive for both Hepatitis B and C, but the RIBA test was negative (id.; Doc. # 41, Ex. 4). Plaintiff's ALT level was 92 (DSOF ¶ 42).

On February 27, 2005, Plaintiff submitted a HNR requesting the results of his blood tests (id. ¶ 43). Plaintiff saw Dr. Eduardo Vinuluan on April 28, 2005 (id. ¶ 44). Plaintiff's chart states that Dr. Vinuluan informed him he had contracted Hepatitis C and underwent Hepatitis counseling (id.).

Defendant next saw Plaintiff on July 3, 2006 (id. ¶ 45). Plaintiff underwent a CT scan on July 17, 2006 that indicated cirrhosis of the liver (id. ¶ 46). Defendant saw Plaintiff again on July 31, 2006 and told him to continue with the treatment he had been prescribed (id. ¶ 47).

Defendant began seeing Plaintiff regularly in August 2006 (id. ¶ 48). On August 17, 2006, Defendant ordered viral loads for Hepatitis B, requested a liver biopsy, and ordered a Hepatitis genotype test (id. ¶ 49). Between August 2006 and June 2008, Defendant has treated Plaintiff for his Hepatitis issues, seeing Plaintiff approximately 30 times (id. ¶ 50).

### III. Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on all of Plaintiff's claims (Doc. # 46). First, Defendant argues that Plaintiff's claims are barred by the statute of limitations (id. at 13). Specifically, Defendant contends that because Plaintiff's original Complaint was filed on May 18, 2007, Plaintiff's claims that accrued before May 18, 2005 are barred (id.). And because Plaintiff contends that Defendant failed to follow up on abnormal liver function tests in 2003, failed to timely diagnose Plaintiff's Hepatitis, and failed to provide any treatment for his Hepatitis, all of which occurred before May 2005, all his claims are barred.

In the alternative, Defendant argues that he was not deliberately indifferent to Plaintiff's serious medical needs (id. at 16). Defendant contends that when he saw Plaintiff's abnormal ALT results in November 2003, he indicated on Plaintiff's chart that a follow-up should be scheduled and the fact that it was not scheduled does not give rise

- 3 -

to a deliberate indifference claim (id. at 19).  Further, Defendant argues that he did not see Plaintiff again until September 2004, at which point he ordered additional tests. Specifically, Defendant contends that Plaintiff's November 2004 blood tests indicated he had Hepatitis B, but did not have Hepatitis C (id. at 20).

Defendant also contends that any delay in treatment Plaintiff experienced caused no harm because Hepatitis is a "slow-moving disease where rapid treatment is not necessary" (id. at 21).  In sum, Defendant contends that he was "consistently responsive" to Plaintiff's needs (id. at 23).  In support of his motion, Defendant submits his Statement of Facts (Doc. # 41, DSOF); the declaration of Defendant (Doc. # 41, Ex. A, Def. Decl.); copies of Plaintiff's medical records and lab test results (Doc. # 41, Ex. A, Attachs. 1-4); a copy of Plaintiff's inmate record (Doc. # 41, Ex. B); a copy of Plaintiff's October 15, 2004 Health Needs Request (Doc. # 41, Ex. C); a copy of Plaintiff's February 27, 2005 Health Needs Request (Doc. # 41, Ex. D); and the declaration of Dr. Eduardo Vinulan, with attachments (Doc. # 41, Ex. E, Vinulan Decl.).

In response, Plaintiff first disputes Defendant's argument that his claims are barred by the statute of limitations.  Plaintiff disputes that he was diagnosed with Hepatitis C in April 2005, but instead had a general discussion about Hepatitis C with Dr. Vinuluan. Plaintiff contends that he had no reason to know of his claim, and therefore it did not accrue, until July 2006 when he was diagnosed with cirrhosis and learned that the delay in diagnosis and treatment of his Hepatitis was the cause (Doc. # 48 at 6).  Plaintiff also argues that genuine issues of material fact preclude summary judgment as to whether Defendant was deliberately indifferent to Plaintiff's serious medical needs (id. at 7). Specifically, Plaintiff contends that Defendant was aware of Plaintiff's serious medical needs from 2003 until 2006, but repeatedly failed to diagnose Plaintiff or provide appropriate treatment.  Moreover, Plaintiff contends that had Plaintiff undergone treatment for Hepatitis B in 2003, he would not have end-stage liver disease (id. at 8).

In support of his response, Plaintiff submits his Statement of Facts (Doc. # 49, Pl.'s Statement of Facts (PSOF)); the declaration of Dr. Jay R. Long (Doc. # 49, Ex. A,

- 4 -

Long Decl.); the declaration of Dr. J. Michael Millis (Doc. # 49, Ex. B, Millis Decl.); the Expert Report from Dr. J. Michael Millis (Doc. # 49, Ex. C, Millis Report); Plaintiff's September 2, 2000 lab test results (Doc. # 49, Ex. D); the Expert Report from Dr. Jay Long (Doc. # 49, Ex. E, Long Report); copies of Plaintiff's medical records and lab reports from August 2002-December 2004 (Doc. # 49, Exs. F-N); the deposition of Defendant (Doc. # 49, Ex. O); the deposition of Plaintiff (Doc. # 49, Ex. P); a copy of the ADC's Consent/Refusal to Treatment of Hepatitis C form (Doc. # 49, Ex. Q); copies of Plaintiff's medical records and from July-September 2006 (Doc. # 49, Exs. R-T); and a copy of Plaintiff's December 10, 2004 lab test results (Doc. # 49, Ex. U).

In reply, Defendant contends that no reasonable juror could conclude that Plaintiff did not know he had Hepatitis in April 2005 and, therefore, his claim is barred by the statute of limitations (Doc. # 51). Defendant argues that Plaintiff's "improbable statement" that he was not told in April 2005 that he had Hepatitis is insufficient to defeat summary judgment (id. at 3). Moreover, Defendant claims that diligence would have informed Plaintiff of who to file suit against (id. at 4).

Defendant also maintains that he never purposefully ignored or failed to respond to Plaintiff's serious medical needs. Defendant acknowledges that he may have been grossly negligent in his treatment of Plaintiff, but there is "no material factual dispute as to whether [Defendant] was deliberately indifferent" to Plaintiff's medical issues (id. at 7). Defendant specifically argues that he treated Plaintiff whenever he saw Plaintiff and that the only dispute is whether the appropriate testing or treatment was done, which could only establish negligence (id.).

Plaintiff supplemented his response to include the report of Defendant's expert Dr. Thomas D. Boyer (Doc. # 54, Boyer Report). Boyer opined that Plaintiff should have undergone further testing or been referred to a gastroenterologist as a result of his persistently elevated liver enzyme levels and positive test results for Hepatitis B and C (id.).

**IV. Legal Standards**

### A. Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). But conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076.

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255. And all reasonable inferences that may be drawn from the facts must be drawn in favor of the opposing party. See Matsushita Elec.

1  Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

   **B.     Statute of Limitations**

   In § 1983 actions, the applicable statute of limitations is the forum state's statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266, 274-76 (1985); Vaughan v. Grijalva, 927 F.2d 476, 478 (9th Cir. 1991). The Arizona statute of limitations for personal injury actions is two years. See A.R.S. § 12-542(1); Madden-Tyler v. Maricopa County, 943 P.2d 822, 824 (Ariz. Ct. App. 1997); Vaughan, 927 F.2d at 478.

   Both federal and state law recognize that the statute of limitations is tolled by the "discovery rule." Bibeau v. Pacific Nw. Research Found., Inc., 188 F.3d 1105, 1108 (9th Cir. 1999); Walk v. Ring, 44 P.3d 990, 994 (Ariz. 2002). The "statute only begins to run once a plaintiff has knowledge of the 'critical facts' of his injury, which are 'that he has been hurt and who has inflicted that injury.'" Bibeau, 188 F.3d at 1108. A plaintiff, however, must exercise diligence to discover the critical facts once he becomes aware of an injury. Id.

   **C.     Deliberate Indifference**

   The Eighth Amendment requires that prisoners receive adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail on an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." Id. The test for deliberate indifference consists of two parts in the Ninth Circuit. McGuckin v. Smith, 974 F.2d 1050 (9th Cir.1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir.1997) (en banc). A plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir 2006) (internal quotations and citations omitted). Second, a plaintiff must establish deliberate indifference to that need. McGuckin, 974 F.2d at 1060. A state prison official is deliberately indifferent if he both knows of and disregards an excessive risk to an

inmate's health. Farmer v. Brennan, 511 U.S. 825, 837 (1994). This requires a "purposeful act or failure to respond to a prisoner's pain or possible medical need" and "harm caused by the indifference." Jett, 439 F.3d at 1096. Deliberate indifference may be shown when an official denies, delays, or intentionally interferes with treatment or by the way that a medical professional provides the care. Id. A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. McGuckin, 974 F.2d at 1060. If the harm is an "isolated exception" to the defendant's "overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference." Id. (citations omitted).

Negligence or medical malpractice does not establish a sufficiently culpable state of mind. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980). But a prisoner does not have to prove that he was completely denied medical care in order to demonstrate deliberate indifference. Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000). "[A] mere 'difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.'" Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citations omitted). To prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the course of treatment the doctors chose was medically unacceptable in light of the circumstances and that it was chosen in conscious disregard of an excessive risk to plaintiff's health. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

**V.     Analysis**

    **A.     Statute of Limitations**

The parties dispute when Plaintiff's claims accrued and, therefore, whether his claims are ultimately barred by the statute of limitations. Under the discovery rule, a plaintiff's claim accrues when he has "knowledge of the 'critical facts' of his injury." Bibeau, 188 F.3d at 1108. Defendant argues that Plaintiff had reason to know of his claims beginning in 2003 when Defendant ordered Plaintiff's first abnormal blood test.

1  In the alternative, Defendant contends that Plaintiff's claims accrued no later than April
2  20, 2005, when Plaintiff learned he had Hepatitis C.  Plaintiff disputes that he learned he
3  had Hepatitis C on April 20, 2005, but rather had a general conversation about Hepatitis
4  and its risk factors with Dr. Vinuluan.  Moreover, Plaintiff further argues that his
5  deliberate indifference claim could not accrue until he had reason to know of his injury,
6  which did not occur until July 2006 when he learned he had cirrhosis.
7  　　　The Court finds that Plaintiff's claims are not barred by the statute of limitations
8  because he had no reason to know that any of Defendant's actions or inactions caused
9  him any injury until he discovered he had cirrhosis in July 2006.  Id.  This conclusion is
10 bolstered by the fact that there is nothing more that Plaintiff could have done to determine
11 whether he was injured by Defendant's actions because he is subject to their professional
12 judgment and was not sent for any testing to determine the extent of his Hepatitis until
13 2006.
14 　　　The Court also notes that Defendant has presented inconsistent arguments.
15 Defendant first contends that Plaintiff should have known that his cause of action accrued
16 "when he discovered he might have [H]epatitis" and knew that Defendant failed to follow
17 up on Plaintiff's 2003 lab tests (Doc. # 46 at 14).  Under this theory, Defendant posits that
18 Plaintiff should have known that he had Hepatitis by April 28, 2005 and therefore,
19 Plaintiff's claims are time barred.  In contrast, Defendant contradictorily asserts that he
20 could not have been deliberately indifferent to Plaintiff's serious medical needs because
21 Hepatitis is a "slow moving disease where rapid treatment is not necessary" and
22 Defendant "could not have been aware of the facts from which the inference could be
23 drawn that a substantial risk of serious harm exist[ed]" (Doc. # 46 at 21).  Consequently,
24 Defendant urges the Court to find that Plaintiff had enough information to draw the
25 inference that he was at risk, but also find that the physician treating him did not have
26 enough information to draw that inference.  The Court is unpersuaded by this circuitous
27 logic.  Nor is the Court distracted by whether Plaintiff actually learned he had Hepatitis
28 on April 28, 2005, because Plaintiff could not have known at that time that Defendant's

1 failure to timely diagnose or treat his Hepatitis would cause permanent liver damage.
2 Moreover, there is absolutely no evidence that Plaintiff was *ever* informed he had
3 Hepatitis B. Consequently, with respect to this diagnosis, Defendant's argument is
4 baseless.

5 In short, Plaintiff had no reason to know about the result of the delay in the
6 diagnosis and treatment of his Hepatitis until July 2006. Consequently, Plaintiff's May
7 2007 civil rights complaint is timely and Defendant is not entitled to summary judgment
8 on this basis.

9     **B.**     **Deliberate Indifference**

10 Plaintiff alleged in his First Amended Complaint that Defendant's failure to
11 follow-up on abnormal lab tests, diagnose Plaintiff's serious medical condition, and treat
12 Plaintiff's serious medical condition constituted deliberate indifference. The record
13 reflects that Plaintiff has been diagnosed with both Hepatitis B and Hepatitis C (Doc. #
14 41, Ex. 4). The parties do not dispute that Plaintiff suffered from a serious medical need,
15 thereby satisfying the first prong of the deliberate indifference test. Estelle, 429 U.S. at
16 104. The Court will address each disease in turn.

17     *1.*     *Hepatitis B*

18 The record is undisputed that Plaintiff tested positive for Hepatitis B on November
19 23, 2004 and Defendant read that report on December 2, 2004 (Doc. # 49, Ex. L). Yet
20 Defendant makes no argument whatsoever with respect to the treatment of Plaintiff's
21 Hepatitis B; his summary judgment motion focuses exclusively on Plaintiff's Hepatitis C.
22 For this reason alone—Defendant's failure to move for summary judgment as to
23 Plaintiff's Hepatitis B—the Court finds Defendant is not entitled to summary judgment.

24 But even if the Court were to assume that Defendant intend to move for summary
25 judgment with respect to Plaintiff's Hepatitis B on the ground that he was not deliberately
26 indifferent, the Court would still find that Defendant is not entitled to summary judgment.
27 Defendant's own expert reviewed Plaintiff's medical records and determined that Plaintiff
28 was diagnosed with Hepatitis B in December 2004 but was not seen for his liver again

1  until June 2006 (Doc. # 54, Ex. A). Defendant's expert also opined that Hepatitis B likely
2  caused Plaintiff's cirrhosis with decompensation (id.).

3  Further supporting the conclusion that genuine issues of material fact preclude
4  summary judgment as to whether Defendant was deliberately indifferent to Plaintiff's
5  Hepatitis B are the two declarations from Plaintiff's experts. Dr. Millis opined that had
6  Plaintiff "started treatment for Hepatitis B in 2004 or earlier, . . . [Plaintiff's] liver disease
7  would not have progress[ed] as rapidly" (Doc. # 49, Ex. C). And Dr. Long stated that by
8  the time Plaintiff began treatment for his Hepatitis in November 2006, his liver disease
9  was "so far advanced" that he required hospitalization (id., Ex. E).

10  It is undisputed that Defendant was aware Plaintiff tested positive for Hepatitis B
11  in December 2004, see Doc. # 49, Ex. L, but took no further action in response to that
12  information. While Defendant seemingly contends that he did not draw the inference that
13  Plaintiff was at risk, the Court declines to make a determination about Defendant's
14  subjective state of mind. See Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d
15  1283, 1302 (9th Cir. 1999) ("[Q]uestions involving a person's state of mind are generally
16  factual issues inappropriate for resolution by summary judgment." (internal quotes
17  omitted)). The Court finds a reasonable juror could determine that Defendant was
18  deliberately indifferent to Plaintiff's serious medical needs. Farmer, 511 U.S. at 837.
19  Defendant is not entitled to summary judgment on this claim.

20  ### 2. *Hepatitis C*

21  Similarly, the Court finds that Defendant is not entitled to summary judgment as to
22  Plaintiff's Hepatitis C. As early as 2003, Defendant was presented with evidence that
23  Plaintiff had abnormal liver function (Doc. # 41, Ex. I). And while Defendant noted
24  Plaintiff's chart that follow-up was needed, no follow-up ever occurred. More disturbing,
25  however, is Defendant's failure to take *any* action after ordering Plaintiff's Hepatitis
26  panel in November 2004. Plaintiff tested positive for both Hepatitis B and Hepatitis C,
27  yet Defendant's own expert states that Plaintiff's medical records reflect that he was not
28  seen again for his liver until June 2006 (Doc. # 54, Ex. A ("The next time [Plaintiff] was

seen relative to his liver is June of 2006[.]"). Defendant attempts to argue that other health care providers saw Plaintiff from February 2004 through August 2006, thereby absolving Defendant of the responsibility for ensuring Plaintiff receives acceptable medical care. But the critical fact remains that it was Defendant who ordered Plaintiff's Hepatitis profile in November 2004 but failed to take any action in response. As articulated above, these facts are sufficient for a jury to find deliberate indifference.

Defendant also argues that the delay in treatment did not cause Plaintiff any harm (Doc. # 46 at 21). This argument, however, is wholly contradicted by the evidence in the record and Defendant fails to cite to any evidence to support it. Defendant is not entitled to summary judgment.

**IT IS ORDERED**:

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants 's Motion for Summary Judgment (Doc. # 46). All other matters in this action remain with the Magistrate Judge for disposition as appropriate.

(2) Defendant's Motion for Summary Judgment (Doc. # 46) is **denied**.

DATED this 10th day of August, 2009.

_____
G. Murray Snow
United States District Judge